## NO.  25-40389

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

## UNITED STATES OF AMERICA,

### Plaintiff – Appellee,

### v.

## KEITH TODD ASHLEY,

### Defendant – Appellant.

## ON APPEAL FOR THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

### Trial Court No. 4:20-CR-00318

### APPELLANT'S BRIEF

James P. Whalen
9300 John Hickman Parkway, Suite 501
Frisco, Texas 75035
Tel: (214) 368-2560

Attorney for Appellant
Keith Todd Ashley

CERTIFICATE OF INTERESTED PARTIES

Undersigned counsel of record certifies that the following parties may have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

| | |
|---|---|
| Keith Todd Ashley, BOP # 17619-509<br>FCI Beaumont Medium<br>PO Box 26040<br>Beaumont, Texas 77720 | Appellant |
| James P. Whalen<br>9300 John Hickman Parkway, Suite 501<br>Frisco, Texas 75035 | Counsel for Appellant<br>(District/Appellate Court) |
| Ryne Thomas Sandel<br>9300 John Hickman Parkway, Suite 501<br>Frisco, Texas 75035 | Counsel for Appellant<br>(District Court) |
| Heather Rattan<br>United States Attorney's Office – Plano<br>101 E. Park Blvd., Suite 500<br>Plano, Texas 75074 | Counsel for Appellee<br>(District Court) |
| Jay Combs<br>United States Attorney's Office – Plano<br>101 E. Park Blvd., Suite 500<br>Plano, Texas 75074 | Counsel for Appellee<br>(District Court) |
| Jason Fine<br>Dallas County District Attorney's Office<br>133 N. Riverfront Blvd, LB19<br>Dallas, Texas 75207 | Counsel for Appellee<br>(District Court) |

Marisa J. Miller                                                     Counsel for Appellee
United States Attorney's Office – Plano                    (Appellate Court)
101 E. Park Blvd., Suite 500
Plano, Texas 75074

Bradley Elliot Visosky                                          Counsel for Appellee
United States Attorney's Office – Plano                    (Appellate Court)
101 E. Park Blvd., Suite 500
Plano, Texas 75074

Sean Day                                                          Counsel for Appellee
Special Assistant U.S. Attorney                             (Appellate Court)
441 G Street, NW, Suite 6150
Washington, DC 20530

The Honorable Kimberly Priest Johnson          United States Magistrate Judge
Eastern District of Texas, Sherman Division
United States Courthouse
7940 Preston Road
Plano, Texas 75024

The Honorable Amos L. Mazzant, III               United States District Judge
Eastern District of Texas, Sherman Division
United States Courthouse
200 N. Travis St.
Sherman, Texas 75090

Signed this 31st day of October 2025.

/s/ James P. Whalen
JAMES P. WHALEN

## **STATEMENT REGARDING ORAL ARGUMENT**

Appellant Ashley respectfully requests oral argument. Counsel believes that this is a unique case and that oral argument will aid in the decision process, as a discussion of the facts specific to this case will serve the important purpose of assuring a complete understanding of Appellant's argument. As such, undersigned counsel believes oral argument would be highly beneficial in this Court's full understanding of counsel's position.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ........................................................2

TABLE OF CONTENTS.....................................................................................5

TABLE OF AUTHORITIES ..............................................................................6

STATEMENT OF JURISDICTION...................................................................12

STATEMENT OF THE ISSUES.......................................................................12

    1.    Ashley's sentence is both procedurally and substantively unreasonable because the court violated the Ex Post Facto Clause by applying the 2024 Guidelines and then imposed an unjustified and excessive variance................12

    2.    The prosecution's actions throughout this case, including its shifting positions and escalating posture, reflect vindictive conduct that violates due process and warrants reversal. ....................................................................12

    3.    Ashley's pre-sentence report and judgment contain statutory references to counts vacated by this court..................................................................12

STATEMENT OF THE CASE............................................................................12

    1.    Procedural History .................................................................................12

    2.    Facts Relevant to Appeal ......................................................................17

SUMMARY OF THE ARGUMENT(S) .............................................................23

ARGUMENT and AUTHORITIES....................................................................23

CONCLUSION ................................................................................................56

CERTIFICATE OF SERVICE ..........................................................................57

CERTIFICATE OF COMPLIANCE..................................................................58

## TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*Alabama v. Smith,*
   490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989) ....................................46

*Apprendi v. New Jersey,*
   530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) ...................................34

*Blackledge v. Perry,*
   417 U.S. 21, 94 S. Ct. 2098 (1974) .......................................................................44

*Bordenkircher v. Hayes,*
   434 U.S. 357, 98 S. Ct. 663 (1978) ...............................................................43, 44

*Cunningham v. California,*
   549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007) ...................................35

*Dean v. United States,*
   581 U.S. 62, 137 S. Ct. 1170 (2017) .............................................................31, 41

*U.S. v. Booker,*
   543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) ...................................24

*Gall v. United States,*
   552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007) ...............24, 25, 28, 30, 31

*Hewitt v. United States,*
   145 S. Ct. 2165 (2025) ...............................................................................29, 33

*Jones v. United States,*
   574 U.S. 948, 135 S. Ct. 8 (2014) .......................................................................29

*McClinton v. United States,*
   143 S. Ct. 2400 (2023) ......................................................................................29

*Molina-Martinez v. United States,*
   578 U.S. 189, 136 S. Ct. 1338 (2016) ...............................................................28

*North Carolina v. Pearce,*
  395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) ................................33, 44

*Pepper v. United States,*
  562 U.S. 476, 131 S. Ct. 1229 (2011) ................................................................39

*Puckett v. United States,*
  556 U.S. 129, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009) ..................................25

*Rosales-Mireles v. United States,*
  138 S. Ct. 1897, 201 L. Ed. 2d 376 (2018) ........................................................28

*United States v. Avan Nguyen,*
  854 F.3d 276 (5th Cir. 2017) ............................................................................31

*United States v. Ayres,*
  76 U.S. (9 Wall.) 608, 19 L. Ed. 625, 19 L. Ed. 627, 7 Ct. Cl. 152, 9 Wall. 608,
  610 (1870) ........................................................................................................33

*United States v. Bell,*
  808 F.3d 926, 420 U.S. App. D.C. 387 (D.C. Cir. 2015) ....................................29

*United States v. Bostic,*
  970 F.3d 607 (5th Cir. 2020) ............................................................................25

*United States v. Chandler,*
  732 F.3d 434 (5th Cir. 2013) ............................................................................37

*United States v. Dorsey,*
  512 F.3d 1321 (11th Cir. 2008) ........................................................................54

*United States v. Dvorin,*
  817 F.3d 438 (5th Cir. 2016) .......................................................................44, 46, 47

*United States v. Fuentes-Canales,*
  902 F.3d 468 (5th Cir. 2018) ............................................................................25

*United States v. Gerezano-Rosales,*
  692 F.3d 393 (5th Cir. 2012) .......................................................................32, 39

*United States v. Goodwin,*
  457 U.S. 368, 102 S. Ct. 2485 (1982) ......................................................43, 44, 48

*United States v. Harrington,*
  82 F.3d 83 (5th Cir. 1996) .........................................................................37

*United States v. Hernandez-Martinez,*
  485 F.3d 270 (5th Cir. 2007) .....................................................................25

*United States v. Johnson,*
  221 F.3d 83 (2d Cir. 2000) ........................................................................54

*United States v. Krezdorn,*
  718 F.2d 1360 (5th Cir. 1983) ..............................................................45, 47, 48

*United States v. Looney,*
  532 F.3d 392 (5th Cir. 2008) .................................................................41, 52

*United States v. Mathes,*
  759 F. App'x 205 (5th Cir. 2018) ................................................................36

*United States v. Mathes,*
  790 F. App'x 6 (5th Cir. 2020) ..................................................................36

*United States v. Mathes,*
  839 F. App'x 879 (5th Cir. 2021) ...............................................30, 31, 32, 37, 39

*United States v. Moulder,*
  141 F.3d 568 (5th Cir. 1998) .....................................................................47

*United States v. Neba,*
  901 F.3d 260 (5th Cir. 2018) ................................................................41, 51, 52

*United States v. Peltier,*
  505 F.3d 389 (5th Cir. 2007) .....................................................................30

*United States v. Rodriguez,*
  801 F. App'x 278 (5th Cir. 2020) .............................................................26, 28

*United States v. Sabillon-Umana,*
   772 F.3d 1328 (10th Cir. 2014) ........................................................29

*United States v. Saltzman,*
   537 F.3d 353 (5th Cir. 2008) ...............................44, 45, 48, 54, 56

*United States v. Santillan-Molina,*
   756 F. App'x 382 (5th Cir. 2018) ....................................................32

*United States v. Sepulveda,*
   64 F.4th 700 (5th Cir. 2023) ............................................................39

*United States v. Smith,*
   440 F.3d 704 (5th Cir. 2006) ...........................................................30

*United States v. Urbina-Fuentes,*
   900 F.3d 687 (5th Cir. 2018) ...........................................................28

*United States v. Wade,*
   931 F.2d 300 (5th Cir. 1991) ...........................................................38

*United States v. Watts,*
   519 U.S. 148, 117 S. Ct. 633, 136 L. Ed. 2d 554 (1997) .................29

*United States v. Wells,*
   262 F.3d 455 (5th Cir. 2001) .....................................................45, 47

*United States v. Zuniga-Peralta,*
   442 F.3d 345 (5th Cir. 2006) ...........................................................30

**Federal Statutes**

18 U.S.C. § 1341 ...............................................................................14

18 U.S.C. § 1343 ...............................................................................14

18 U.S.C. § 2113 ........................................................................14, 56

18 U.S.C. § 3231 ...............................................................................13

18 U.S.C. § 3551 ...............................................................................................38

18 U.S.C. § 3553 ..........................................................................................25, 30

18 U.S.C. § 3742 ...............................................................................................13

18 U.S.C. § 924 .................................................................................................14

18 U.S.C.S. app. § 2B ........................................................................................27

28 U.S.C. § 1291 ...............................................................................................13

**Rules**

5th Cir. R. 32.2 .................................................................................................59

Fed. R. App. P. 32 .............................................................................................59

Fed. R. Crim. P. 29 ......................................................................................50, 55

Fed. R. Crim. P. 52 ...........................................................................................25

**Other**

U.S. Sent'g Guidelines Manual § 1B1.1 ...........................................................26

U.S. Sent'g Guidelines Manual § 1B1.3 ..............................................29, 32, 33

U.S. Sent'g Guidelines Manual § 2B1.1 ...........................................................26

U.S. Sent'g Guidelines Manual § 4C1.1 ...........................................................27

**NO. 25-40389**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**UNITED STATES OF AMERICA,**

**Plaintiff – Appellee,**

**v.**

**KEITH TODD ASHLEY,**

**Defendant – Appellant.**

## ON APPEAL FOR THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

**Trial Court No. 4:20-CR-00318**

**APPELLANT'S BRIEF**

**TO THE HONORABLE JUSTICES OF THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT:**

## STATEMENT OF JURISDICTION

The District Court had jurisdiction under 18 U.S.C. § 3231. The District Court announced the resentence on June 24, 2025, and entered its final Judgment on the same day. ROA.1244-46,1248-54. Ashley timely filed his notice of appeal on June 24, 2025. ROA.1255-56. The Court has jurisdiction over Ashley's appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

1. **Ashley's sentence is both procedurally and substantively unreasonable because the court violated the Ex Post Facto Clause by applying the 2024 Guidelines and then imposed an unjustified and excessive variance.**

2. **The prosecution's actions throughout this case, including its shifting positions and escalating posture, reflect vindictive conduct that violates due process and warrants reversal.**

3. **Ashley's pre-sentence report and judgment contain statutory references to counts vacated by this court.**

## STATEMENT OF THE CASE

### 1. Procedural History

On November 13, 2020, the Appellant, Keith Todd Ashley (hereinafter "Ashley"), was arrested on an indictment, alleging six counts of wire fraud (Counts One - Six), in the Eastern District of Texas. ROA.32-48. Ashley filed a Motion for a detention hearing on December 23, 2020. ROA.81-83. On February 2, 2021,

Ashley appeared before Magistrate Judge Kimberly C. Priest Johnson, who ordered Ashley detained. ROA.87-91. On April 26, 2021, Ashley filed a Notice of Appeal with this Court for the issue of detention. ROA.208-09. On July 6, 2021, the Fifth Circuit Court of Appeals issued its opinion affirming the order for detention pending trial. ROA.214-18. The government sought four superseding indictments throughout the pre-trial posture of this case. On September 15, 2022, Ashley was indicted by a Grand Jury in the Eastern District of Texas, in a Fourth Superseding Indictment. The indictment charged Ashley with thirteen counts of wire fraud (Counts 1–6[1], 9–14, and 20) in violation of 18 U.S.C. §§ 1343 and 1349; two counts of mail fraud (Counts 15–16) in violation of 18 U.S.C. § 1341; one Carrying or Discharging a Firearm During a Crime of Violence (Count 17) in violation of 18 U.S.C. § 924(c)(1); one Count of Hobbs Act Robbery causing death (Count 18) in violation of 18 U.S.C. § 924(c)(1) and (j); and one Count of Bank Theft causing death (Count 19) in violation of 18 U.S.C. § 2113(b), (d) and (e). ROA.552-77.

In addition to many substantive pre-trial motions, Ashley filed a Motion to Dismiss Due to Prosecutorial Vindictiveness on September 16, 2022. ROA.632-37. On September 19, 2022, the government filed a response to Ashley's Motion. ROA.654-62. The court orally denied this motion on September 22, 2022. ROA.883.

---

[1] with an enhancement for "affecting a financial institution",

Ashley persisted in his plea of not guilty and proceeded to trial. On September 26, 2022, a jury trial commenced before United States District Judge Amos L. Mazzant, III. ROA.920-21. On October 5, 2022, the jury returned a verdict of guilty on all submitted counts[2], including: Wire Fraud Affecting a Financial Institution (Counts 1–6)[3]; Wire Fraud (Counts 9–14, 20); Mail Fraud (Counts 15–16); Possession or Carrying of a Firearm During the Commission of a Crime of Violence Causing the Murder of a Person Through the Use of a Firearm (Count 18)[4]; and Bank Theft Killing A Person in Commission of the Violation (Count 19)[5]. ROA.1005-20.

On August 17, 2023, Ashley appeared before United States District Judge Amos L. Mazzant, III for sentencing. The government, despite previously requesting an upward departure, recommended a downward variance of 240 months on Counts 1 through 6, effectively abandoning the "affecting a financial institution" enhancement after Ashley argued this issue in his Rule 29 Motion. ROA.1182,3138. After adopting the original Final PSR and hearing arguments from both parties, the court outlined the Guideline range: 360 months for Counts 1 – 6; 240 months for Counts 9, 10, 11, 12, 13, 14, 15 and 16; life for Count 18; life for Count 19; and 240 months for Count 20. ROA.3133-34. The court sentenced Ashley to a sentence of

---

[2] Count 17 was abandoned at trial.
[3] Increasing the maximum sentence from 20 years to 30 years.
[4] Carrying a Mandatory Sentencing Minimum of Life.
[5] Carrying a Mandatory Sentencing Minimum of Life.

240 months on Counts 1 – 6, 240 months on Counts 9 – 16, life imprisonment on Counts 18 and 19, and 240 months on Count 20. Judge Mazzant ordered Counts 1 – 6 to run consecutively to Counts 9 – 16, 18 and 19, and Count 20 to run consecutively to all other counts. ROA.1182,3148.

Ashley appealed to this Court, filing his Appellant's brief on August 21, 2023. ROA.1197-98. Ashley challenged the sufficiency of the evidence on Counts One through Six, Counts Nine through Sixteen, Count Eighteen, and Count Nineteen. He also challenged: (1) improper venue for Counts 18 and 19; (2) lack of federal jurisdiction for Count 18, (3) the denial of a motion to continue and to sever, and (4) the procedural and substantive unreasonableness of his sentence. Finally, Ashley argued that the aggregation of errors resulted in the denial of a constitutional right to a fair trial and that the Cumulative Error Doctrine applies.

For the first time on appeal, the government conceded that multiple convictions and enhancements lacked evidentiary support. It admitted insufficient evidence for Counts 2, 4, 5, and 6; for Count 18 in its entirety; and for the life-sentence enhancement for Count 19. ROA.1211-33.

After hearing oral argument and requesting supplemental briefing, the Fifth Circuit agreed with the government's concessions and vacated Counts 2, 4, 5, 6, and 18, and the sentencing enhancements on Counts 1 – 6, 18, and 19. The Fifth Circuit

also vacated Counts 9 – 13 and 15 – 16, although the government did not concede these counts. Counts One, Three, Fourteen, Nineteen, and Twenty were affirmed and remanded to the district court for resentencing. ROA.1211-33. On May 19, 2025, Ashley filed a Petition for a Writ of Certiorari with the United States Supreme Court; *Keith Todd Ashley v. United States of America*, 24-726. On June 23, 2025, the Petition for a Writ of Certiorari was denied. ROA.1258.

On December 23, 2024, a Revised Pre-Sentence Report ("PSR") was filed. ROA.24273-308. This revised PSR calculated Ashley's Guidelines range as 108 months to 135 months for Counts One, Three, Fourteen, and Twenty; and 108 months to 120 months for Count Nineteen. Ashley filed objections to the revised PSR. ROA.24309-313. On June 11, 2025, the Final PSR maintained Ashley's Guidelines range as 108 months to 135 months for Counts One, Three, and Fourteen; and 108 months to 120 months for Count Nineteen. ROA.24314-360. Ashley filed a sentencing memorandum on June 17, 2025. ROA.24713-720. The government filed a Motion for Upward Departure and Request for Consecutive Sentencing on June 18, 2025. ROA.24721-730. Ashley filed a Response to the government's Motion for Upward Departure on June 23, 2025. ROA.24731-761. The government filed a Reply to Ashley's response to their Motion for Upward Departure on June 24, 2025. ROA.24762-765.

On June 24, 2025, Ashley appeared before United States District Judge Amos L. Mazzant, III for sentencing. The court overruled all of Ashley's objections to the PSR and adopted the Final PSR and Sentencing Guidelines. ROA.1244-45,3158-68. After hearing argument from Ashley and the government, the court sentenced Ashley to an above Guidelines sentence and committed him to the Bureau of Prisons for a period of 720 months. ROA.3196. The court, grouping Counts One and Three together and Counts Fourteen and Nineteen together, imposed the statutory maximum on all counts. The Court sentenced Ashley to a term of 240 months on Counts 1 and 3, 240 months on Count 14 to run consecutively to Counts 1 and 3, 120 months on Count 19 to run concurrently with Count 14, and 240 months on Count 20 to run consecutively to all other counts. ROA.3196.

## 2. **Facts Relevant to Appeal**

Ashely was tried and convicted on two separate, unrelated schemes. Counts One through Six involved a Ponzi scheme in which Ashley allegedly encouraged clients to invest in unit investment trusts ("UIT") and used those funds for personal use. Counts Nine through Twenty alleged a murder-for-profit scheme involving the death of a friend ("Seegan") and a scheme to defraud a life insurance company ("Midland National").

The State of Texas indicted Ashley on capital murder, on April 21, 2021, in

connection with the latter scheme. ROA.526. The federal government acquiesced jurisdiction of Ashley to Dallas County on June 23, 2021. Ashley was remanded back to federal custody on January 12, 2022, even though the state case remained unresolved. ROA.529.

From the outset, Ashley made every possible attempt to put the government and district court on fair notice of the serious deficiencies in the case. Ashley steadfastly warned of the clear legal insufficiencies that existed on nearly every count. ROA.11-17. A third and fourth superseding indictment, filed 11 and 19 days before trial, came after much pre-trial litigation on substantive trial concerns. ROA.464-89,552-77. The third and fourth superseding indictments further compounded the due process violations by introducing two murder enhancements, an additional bank theft count, and a separate life-insurance fraud allegation pertaining to a new alleged victim. Once again, Ashley continued to raise these fundamental issues through numerous pre-trial motions. In total, Ashley filed over a dozen pre-trial motions directly related to issues later heard by this Court on appeal. ROA.11-17.

After a jury convicted Ashley on all counts (seventeen counts with eight sentencing enhancements, two carrying mandatory minimum sentences of life), Ashley filed a robust Rule 29 Motion for Judgment of Acquittal. ROA.24,1032-45.

This Rule 29 Motion provided the trial court a fair opportunity to remedy the legal issues presented. The government responded in opposition of every issue raised. ROA.1064-06. The court denied Ashley's Rule 29 Motion in its entirety. ROA.25,1153-80.

Finally, by sentencing, the government began to openly acknowledge the scope of its errors. After initially seeking an upward departure, it reversed course and requested a downward variance, recommending a 240-month sentence on Counts One through Six. ROA.1182, 3138-39. The district court itself reasoned "I have to assume it's because the law in the Fifth Circuit is a little murky on the effect on a financial institution" and "if I do a variance down for that reason, it takes away the issue from being a concern on appeal." ROA.3140.

Sentencing further underscored the prejudicial atmosphere of this case. The lower court made abundantly clear that after preceding over trial, it would impose the maximum sentence possible and, through a calculated formula, ensure Ashley would never have an opportunity to be released, regardless of "if you go get me reversed on these objections". ROA.3145-46,47.

On appeal, Ashley challenged the sufficiency of the evidence on each and every count, except for Count 20. Ashley also challenged venue for Counts 18 and 19; federal jurisdiction for Count 18; the denial of a motion to continue and to sever;

the procedural and substantive unreasonableness of his sentence; and denial of his right to fair trial through cumulative error. ROA.1214, 1215-16,1222-23,1227-28.

Despite defending the convictions in its response to defendant's Rule 29 Motion, the government "upon reflection" conceded on appeal that the evidence was insufficient to support Counts 2, 4, 5, and 6; Count 18 in its entirety, and the life-sentence enhancement for Count 19. ROA.1215. The appellate division chief prosecutor for the Eastern District of Texas, Bradley Visosky, and Special Assistant U.S. Attorney, Sean Day, authorized the concessions. ROA.24749. To make concessions "at this scale" and to concede "the significant issues that are involved in this trial", Main Justice's involvement is required. ROA.24747,749. In an effort to explain this egregious, overzealous mistake, the government explains that the branch chief reviews all indictments before trial for appropriateness and consistency. In Ashley's case, the branch chief was also on the trial team. ROA.24748. Despite this statement, the chief of the appellate division, as well as many seasoned prosecutors and Main Justice, did not believe that the evidence was sufficient to support its convictions. ROA.24748,750. The government's concessions elicited visible concern and criticism from this Court. [6]

---

[6] **Judge Wilson:** "How in the world couldn't this have happened before you tried the guy on all of these counts? The brief says upon reflection the government[] decide[s] . . . I mean what in the world?" ROA.24747.

This Court agreed with the government's concessions, vacating the relevant counts and enhancements. It affirmed Counts 1 and 3 but agreed the financial institution enhancement, forfeited at sentencing, could not apply on remand. Further, the Fifth Circuit also vacated Counts 9–13 and 15–16, holding there was no evidence of a scheme to defraud Midland National Life Insurance. It affirmed Count 14 but on a different theory than that forwarded by the government — that the true victims were Seegan's family, not Midland (a theory that the government has still not once ever argued). ROA.1721.

Ultimately, this Court vacated twelve counts, eight enhancements, and remanded the remaining for resentencing. It vacated every count in relation to Seegan's death. It found Ashley's challenge to the denial of a continuance moot in light of the vacated convictions. It rejected Ashley's argument for the denial of

---

**Judge Elrod**: "The person who's supposed to review these indictments for consistency and appropriateness thought it was appropriate and was on the trial team in fact?" ROA.24748.

**Judge Elrod**: "How can you concede all of this? And it's probably good that you conceded because that's the role of the United States and any prosecutor, to be for the people and not try to press things that are overzealous, although it would've been more appropriate to have done it on the front end. And that's kind of the problem." ROA.24749.

**Judge Wilson**: "It's hardly fair to the defendant. I mean it's the guy's life and liberty we're talking about, and he had to go through the ordeal of a trial and there's not even a judgment of acquittal or anything like that at the end of the thing." ROA.24750.

**Judge Elrod**: "I just hope it wasn't anything related to somebody trying to make a name for themselves in a murder case. That would be a completely inappropriate reason to have kept it." ROA.24750.

severance, finding no reversible error, given the concessions. It did not consider Ashley's procedural and substantive unreasonable sentence given the remand for resentencing. Despite the government's "unusual" and "numerous" concessions, which this Court acknowledged raised "the prospect that serious error existed in the trial," it declined to apply the cumulative error doctrine. ROA.1232.

Despite its apology for the failure to remedy the errors (ROA.24749-751), the government again sought to expand Ashley's punishment on remand. ROA.24721-730. On June 18, 2025, three business days before re-sentencing, it filed a Motion for Upward Departure and Request for Consecutive Sentencing. ROA.24722-730. That same day, the government conducted its first interview of Brenda Stewart, providing notice and a copy of the interview to Ashley just days before sentencing. ROA.24736. The government relinquished convictions on appeal and then attempted to repurpose them as a basis for its request of 60 years imprisonment. Ashley responded to the government's motion, urging the lower court to recognize the retaliatory position of the government through its prosecutorial vindictiveness and its use of acquitted conduct. ROA.24731-760.

At sentencing, Ashley objected to the loss amount, financial hardship enhancement, sophisticated means enhancement, broker dealer enhancement, restitution, and use of acquitted conduct. ROA.3159-73. The court denied each and

every one of Ashley's objections. The district court was clear in its believe that the "conceded" conduct, as it relates to the murder, should not be considered as acquitted conduct because it was just a conceded enhancement. ROA.3169-75,3191-95. Likewise, the court felt that acquitted conduct is not be used in calculating the Guidelines, however, it was free to consider it in fashioning a sentence. ROA.3191-93,24362.

## SUMMARY OF THE ARGUMENT(S)

1. **The district court's use of the incorrect Guidelines manual in violation of the Ex Post Facto Clause and its imposition of an unwarranted upward variance, render Ashley's sentence both procedurally and substantively unreasonable.**

2. **The government's escalating charging and sentencing decisions and shifting positions in response to the defense's exercise of legal rights, constitutes prosecutorial vindictiveness and violates due process.**

## ARGUMENT and AUTHORITIES

I.   **REASONABLENESS AT SENTENCING.**

Following *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), appellate review of a sentencing decision is limited to determining whether the decision is reasonable. *Gall v. United States*, 552 U.S. 38, 46, 128 S. Ct. 586, 594, 169 L. Ed. 2d 445 (2007). Reasonableness has two parts: procedural and substantive reasonableness. A sentence must be reviewed for procedural

reasonableness before its substantive reasonableness is considered. *United States v. Bostic*, 970 F.3d 607, 610 (5th Cir. 2020). Ashley properly preserved his procedural and substantive reasonableness claim, requiring an abuse of discretion review. *Puckett v. United States*, 556 U.S. 129, 134, 129 S. Ct. 1423, 1428, 173 L. Ed. 2d 266 (2009). ROA.3159-68,3201.

### A. The Court's Imposition of a Sentence of 720 months was Procedurally Unreasonable.

Procedural error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence--including an explanation for any deviation from the Guidelines range" *Gall*, 552 U.S. at 51, 128 S.Ct. 586 (referring to 18 U.S.C. § 3553(a)); *United States v. Bostic*, 970 F.3d 607, 610–11 (5th Cir. 2020).

### i. Improperly Calculated Guidelines

A significant procedural error exists when a district court improperly calculates the Guidelines range. *Bostic*, 970 F.3d 607, 610–11. When a defendant has failed to object before the district court, "should review only for plain error. See FED. R. CRIM. P. 52(b)"[7] *United States v. Fuentes-Canales*, 902 F.3d 468,

---

[7] Under plain error review, the defendant has the burden to show "(1) an error; (2) that is clear and obvious; and (3) that affected h[er] substantial rights." *United States v. Hernandez-Martinez*,

473 (5th Cir. 2018).

A court must apply the United States Sentencing Guidelines in effect at the time of sentencing, unless doing so would violate the Ex Post Facto Clause. U.S. Sentencing Guidelines Manual § 1B1.11; *United States v. Rodriguez*, 801 F. App'x 278, 283 (5th Cir. 2020)(citing *United States v. Urbina-Fuentes*, 900 F.3d 687, 692 (5th Cir. 2018)). Using a Guidelines edition that produces a higher range than the one in effect at the time of the offense violates the Ex Post Facto Clause. *Id.*

The Substantial Financial Hardship enhancement, § 2B1.1(b)(2)(A)(iii), was introduced in the 2016 Guidelines. U.S. Sentencing Guidelines Manual § 2B1.1(b)(16)(A) (U.S. Sentencing Comm'n 2016). Previous editions of the Guidelines do not contain subsection (iii) and therefore does not allow an enhancement for substantial financial hardship to one or more victims. *Id.*

At Ashley's original sentencing, the court found a substantial financial hardship existed for Denny Willmon, the victim of Count 2, and applied the two-point enhancement under § 2B1.1(b)(2)(A)(iii). ROA.24193-220. After Count 2 was vacated on appeal, the government shifted theories and relied on a victim of related conduct, Brenda Stewart, to support this enhancement. ROA.24350. The FBI

---

485 F.3d 270, 273 (5th Cir. 2007). If all three conditions are present, the court may exercise its discretion to correct the error "only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009).

interviewed Ms. Stewart on June 18, 2025. ROA.1247. For the first time, Stewart expressed financial hardship through pointed questioning by the agent[8] – seemingly in an effort to satisfy the application note's considerations. 18 U.S.C.S. app. § 2B1.1. The court found Stewart experienced a substantial financial hardship and applied a two-point enhancement. ROA.3163.

However, according to the PSR, Ashley's conduct involving Ms. Stewart's funds occurred in 2011 and 2012. Ashley set up an Annuity account for Stewart in 2011, and in 2012, Ashley removed money in the amounts of $164,806, $70,000, and $65,000 from Stewart's accounts. ROA.24321-22. Because the conduct predates the 2016 creation of the enhancement, applying the 2024 Guidelines violated the Ex Post Facto Clause. The application of the Substantial Financial Hardship disqualified Ashley for the two-point Zero Point Offender Reduction, under §4C1.1, which he would have otherwise qualified for. ROA.24351. But for this error, Ashley's total offense level would have been 27, making his Guidelines range 70-87 months.

Although Ashley did not raise this issue at sentencing, plain error review is satisfied. Like in *Rodriguez*, (1) the application of the 2024 Guidelines violated the Ex Post Facto Clause resulting in error; (2) the violation is "clear and obvious" under

---

[8] The 302 interview details that Stewart's retirement accounts became practically insolvent, (i) and (iii) of the note. Stewart did not file for bankruptcy, have to relocate, nor did she seek post-retirement employment, (ii), (iv), (v), and (vi) of the note.

established precedent (*see United States v. Urbina-Fuentes*, 900 F.3d 687, 697 (5th Cir. 2018)); and (3) the error increased Ashley's Guideline range by 48 months, affecting his substantial rights. 801 F. App'x at 284. "In the ordinary case, . . . the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1911, 201 L. Ed. 2d 376 (2018). "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 578 U.S. 189, 198, 136 S. Ct. 1338, 1345 (2016). This error inflated Ashley's Guidelines range by four years and directly contributed to the serious absence of fairness in the judicial proceedings riddle through Appellant's brief. This error makes the district court's egregious upward variance even more egregious, turning a 433% departure into a 727% departure.

### ii.  Clearly Erroneous Facts

The district court also committed procedural error by relying on vacated-conduct findings to justify the sentence without a sufficient explanation and in disregard of the evolving legal framework governing such facts at sentencing. *See*

*Gall*, 552 U.S. at 51; *McClinton v. United States*, 143 S. Ct. 2400, 2401-02 (2023); USSG § 1B1.3(c). The Sentencing Commission has now amended §1B1.3 to prohibit the use of acquitted conduct as relevant conduct, recognizing that the practice undermines confidence in the criminal justice system and conflicts with core constitutional principles. While § 1B1.3(c) addresses specifically the use of acquitted conduct in Guidelines calculations, the Sentencing Commission's reliance on the caution by several Supreme Court Justices that the use of acquitted conduct in sentencing is fundamentally unfair bears consideration. *See McClinton*, 143 S. Ct. 2400 (Sotomayor, T., respecting the denial of certiorari); *Jones v. United States*, 574 U.S. 948, 948-49, 135 S. Ct. 8, 8 (2014) (Scalia, J., joined by Thomas and Ginsburg, JJ., dissenting from denial of certiorari); *United States* v. *Bell*, 808 F. 3d 926, 928, 420 U.S. App. D.C. 387 (CADC 2015) (Kavanaugh, J., concurring in denial of reh'g en banc); *United States* v. *Sabillon-Umana*, 772 F. 3d 1328, 1331 (CA10 2014) (Gorsuch, J.); *United States* v. *Watts*, 519 U. S. 148, 170, 117 S. Ct. 633, 136 L. Ed. 2d 554 (1997) (Kennedy, J., dissenting).

Although the vacated counts here did not result from a jury verdict, vacatur "wholly nullifies" a conviction and wipes the slate clean. *See Hewitt v. United States*, 145 S. Ct. 2165, 2174 (2025). The district court's reliance on conduct underlying vacated counts, without adequate explanation and in tension with these principles,

renders the sentence procedurally unreasonable.

### B. The District Court's Sentence was Substantively Unreasonable.

Reasonableness review, in the context of a Guidelines departure, requires us to evaluate both the decision to upwardly depart and the extent of the departure for an abuse of discretion. *United States v. Zuniga-Peralta*, 442 F.3d 345, 347 (5th Cir. 2006). To determine whether a sentence is substantively reasonable, a district court should consider "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. A district court must articulate its reasons for a particular sentence more thoroughly when it imposes a non-Guidelines sentence, and the reasons should be "fact-specific and consistent with the sentencing factors enumerated in section 3553(a)" *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006). A sentence outside the recommended Guidelines range is not presumed reasonable. *United States v. Mathes*, 839 F. App'x 879, 882 (5th Cir. 2021) (citing *Gall*, 552 U.S. at 51)).

A sentence is substantively unreasonable if it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Peltier*, 505 F.3d 389, 392 (5th Cir.2007) (internal quotation marks omitted). 18 U.S.C. § 3553(a) requires courts to "impose

a sentence sufficient, but not greater than necessary, to comply with" the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation" *Dean v. United States*, 581 U.S. 62, 67, 137 S. Ct. 1170, 1175 (2017). Factors to be considered are: (1) the nature and circumstance of the offense and the history of the defendant; (2) the need for the sentence imposed, including reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide defendant with needed education and medical care; (3) the kinds of sentences available; and (4) the Sentencing Guidelines. *See* §§3553(a)(1), (2)(A)-(D). The pertinent Guidelines and policies adopted by the Sentencing Commission must also be taken into account. *Id.* These factors are used to establish appropriate lengths of sentence for separate incarceration terms and aggregate sentence terms from multiple counts of convictions. *Id.*

The degree of variance itself is a key indicator of unreasonableness. *See United States v. Mathes*, 839 F. App'x 879, 882 (5th Cir. 2021)(citing *United States v. Brantley*, 537 F.3d 347, 349-50 (5th Cir. 2008)). A "significant variance" is permitted when it is justified by "the individualized, case-specific reasons provided by the district court" *United States v. Nguyen*, 854 F.3d 276, 283 (5th Cir. 2017) (quotation omitted). "[A] major departure should be supported by a more significant

justification than a minor one." *Gall*, 552 U.S. at 49-50. Ashley's sentence of 720 months was 433% (or over 48 years) higher than the top end of his Guidelines calculations and resulted in significant variance. *See Mathes*, 839 F. App'x 879, 882 (5th Cir. 2021)(six-year upward variance, approximately doubling defendant's sentence, is certainly significant in degree); *United States v. Santillan-Molina*, 756 F. App'x 382, 385 (5th Cir. 2018) (holding an eleven-month sentence enhancement, which constituted a quarter of the defendant's total sentence, to be significant);*United States v. Gerezano-Rosales*, 692 F.3d 393, 400-01 (5th Cir. 2012) (vacating a 37-month upward variance, which constituted about one third of the total sentence).

### i. Acquitted Conduct

The Sentencing Commission recently amended §1B1.3 to prohibit the use of acquitted conduct as relevant conduct.[9] The Commission recognized that continued use of acquitted conduct undermines confidence in the fairness and legitimacy of the criminal system and is incompatible with core constitutional values. This amendment followed years of concern expressed by courts, scholars, and legislators.

Although *McClinton* was denied certiorari pending the Commission's

---

[9] "(c) *Acquitted Conduct*.—Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction."

amendment, multiple Justices agreed that enhancing a sentence based on conduct a jury rejected hinders the perceived fairness and erodes the public's confidence that justice is being done. *Id.* at 2402–03 (Sotomayor, J.); *Id.* at 2403 (Kavanaugh, J., joined by Gorsuch, J. & Barrett, J.). Similarly, Justice Scalia's dissent in *Jones v. United States* argued that where a sentence would be substantively unreasonable but for a judge-found fact, that fact must be found by a jury. 574 U.S. 948, 948–50 (2014) (Scalia, J., joined by Thomas and Ginsburg, JJ.). Numerous states now prohibit the practice, and bipartisan legislation is pending in Congress to ban it federally. Prohibiting Punishment of Acquitted Conduct Act of 2023, S. 2788, H.R. 5430, 118th Cong. (2023); https://www.ussc.gov/guidelines/amendment/826.

The same rationale applies to vacated convictions. A vacated conviction is to be treated as though the conviction never existed and the defendant was never convicted. *Hewitt v. United States*, 145 S. Ct. 2165, 2174 (2025); *North Carolina v. Pearce*, 395 U. S. 711, 721, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (verifying that vacatur causes a conviction to be "wholly nullified and the slate wiped clean")). Therefore, a vacated conviction lacks any prospective legal effect and does not continue to exist as a historical fact. *Id*. (citing *United States v. Ayres*, 76 U.S. 608, 19 L. Ed. 625, 19 L. Ed. 627, 7 Ct. Cl. 152, 9 Wall. 608, 610 (1870)).

Ashley's vacated convictions undoubtedly fall within the rationale behind the

acquitted-conduct prohibition. Indeed, at oral argument this Court recognized the fairness concerns implicated by relying on vacated conduct for sentencing purposes:

> **Judge Elrod**: Are you saying he can consider acquitted conduct? We can't do that anymore, can we? It's not acquitted, but you're conceding it, and so it seems unfair for that to be considered unless it was part of something else."

ROA.24750. The government and the district court assert that "there was nothing in the [Fifth Circuit] opinion indicating that the alleged murder did not happen," and that legal insufficiency is not the same as factual innocence. ROA.3171-72, 3178-79. But an acquittal does not require a showing of innocence; it simply bars reliance on conduct the justice system has refused to convict on. The prohibition on using acquitted conduct does not hinge on certainty of innocence, and the same principle applies here. Had the government conceded in response to Ashley's Motion for Acquittal instead of in its response to Ashley's appellate brief or the district court analyzed Ashley's arguments the same way this Court did, these vacated counts would be labeled acquitted counts. Treating vacated counts differently than acquitted counts creates an arbitrary distinction that punishes a defendant for the procedural posture of his relief.

Nor does the court's reliance on the "acquitted" murder allegations in relation to statutory enhancements rather than convictions vacate the Sixth Amendment concerns. ROA.3171-72,3192. Any fact that increases the penalty to which a

defendant is exposed constitutes an element of a crime, *Apprendi v. New Jersey*, 530 U. S. 466, 483, n. 10, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and "must be found by a jury, not a judge," *Cunningham v. California*, 549 U. S. 270, 281, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007). Likewise, that fact may not be considered in sentencing upon acquittal.

Given the cumulation of the vacated counts, the murder of Seegan is acquitted conduct. Ashley was initially convicted on 10 counts, and two life sentence enhancements, relating to the scheme against Seegan's life insurance policy. In light of the government's concessions and this Court's vacatur, only two counts remain, with no sentencing enhancements. The remaining two counts, wire fraud and bank theft, were upheld on the premise that Ashley falsely represented himself to Seegan's widow and son to gain access to Seegan's phone to wire funds from Seegan's bank account to his own. ROA.1220-21,1223. For the exact reason the two life enhancements were conceded, Seegan's death does not form the basis, in whole or in part, of the bank theft or wire fraud. ROA.24749.[10] Seegan's death occurred two days before any of the underlying conduct that forms the basis for either count nor is it required to establish any element of wire fraud or bank theft.

---

[10] **Bradley Visosky:** ". . . And in the prosecutor's defense, the best argument dealt with the $20,000 two days later, and that was the taking of the personal property, the taking of $20,000 by means of force. . ."

Similarly, in *McClinton*, the defendant was accused of killing his friend in a dispute over the proceeds of a pharmacy robbery. He was convicted of the robbery but acquitted of the killing of his friend. Regardless, this acquitted conduct was considered in his sentencing. *McClinton,* at 2401. While the Supreme Court ultimately denied certiorari in light of the Sentencing Commission's intent to resolve the issue, many justices wrote separately expressing their constitutional and legitimacy concerns when a court imposes punishment for conduct that did not result in a conviction.

### ii. Significant Weight to Improper Factors and No Weight to Significant Factors

Giving significant weight to the conduct of a dismissed charge, that does not affect the Guidelines range, is an irrelevant or improper fact. *United States v. Mathes*, 759 F. App'x 205, 210 (5th Cir. 2018). In *Mathes*, the court's reliance on a dismissed firearm charge, that removed a 15 year mandatory minimum but did not change the 188 to 235 month Guidelines range, in its 10-year variance was substantively unreasonable since significant weight was given to the irrelevant dismissal factor and the court failed to consider defendant's cooperation in balancing the factors. *United States v. Mathes*, 759 F. App'x 205, 210 (5th Cir. 2018). On remand, the district court again imposed a substantively unreasonable sentence by upwardly varying six years based on his criminal history and an unwarranted disparity among

co-defendants, again giving significant weight to an improper consideration. *United States v. Mathes*, 790 F. App'x 6, 8 (5th Cir. 2020). At the third sentencing, the court imposed the same six-year variance based on the defendant's "undeterred" criminal history and drug quantity; the Fifth Circuit reversed once more, holding that although the court cited aggravating factors, its failure to properly balance them, and consider mitigating factors, constituted a clear error of judgment. *United States v. Mathes*, 839 F. App'x 879, 883 (5th Cir. 2021).

Worse here, the court used granular details and background information from acquitted conduct to support a life-equivalent sentence. That runs directly afoul the constitutional boundary cautioned by the Justices. Both at sentencing and in its Statement of Reasons, the district court relied on the aggregating factors of Ashley's profession as a nurse and his access to medication as justification for its departure. ROA.3194,24362. But that rationale stems exclusively from the vacated murder-related allegations. Nursing licensure and access to medication have no logical connection to the financial crimes actually sustained on appeal. Likewise, a defendant's position or career, standing alone, cannot justify a sentence increase. *United States v. Chandler*, 732 F.3d 434, 439 (5th Cir. 2013) (defendant's position as a police officer did not justify the increased sentence given he did not use his position to facilitate the offense); *United States v. Harrington*, 82 F.3d 83, 87 (5th

Cir. 1996) (holding an attorney's status as an officer of the court is not grounds for an upward departure); *United States v. Wade*, 931 F.2d 300, 307 (5th Cir. 1991) (affirming an upward departure based on the defendant's abuse of public trust in his official position). No medication, no medical role, and no abuse of medical access played any part in the surviving conduct. By relying on those facts, the court impermissibly smuggled vacated conduct back into the sentencing calculus. This constitutes giving "significant weight to an irrelevant or improper factor."

The court's upward departure was also based on the death of Seegan. This is acquitted conduct for all intents and purposes. This conduct does not change Ashley's Sentencing Guidelines, given the new amendment. Therefore, this significant reliance on this fact is improper. ROA.24362. Likewise, in addition to relying on 5K2.1 (death) as a reason for departure, the court also indicated that it considered that "some victims did not live long enough to see justice in this case" as a factor for its sentence justification. ROA.24362. This reliance either, again, impermissibly revives the vacated conduct or penalizes Ashley for Villarreal's natural death, ROA.2724, which is not a consequence that should be imposed on Ashley.

In the court's justification for its upward variance, it considered the lack of remorse factor in 18 U.S.C.3551(a)(1). ROA.24363. The court cited no new

information on remand beyond the 2015–2020 casino activity in the PSR for this factor. ROA.3194,24320-21. Yet at the original sentencing, the court explicitly treated Ashley's decision not to allocate, taken on advice of counsel, as "telling" and as evidence of a lack of remorse, thereby penalizing him for exercising his rights. ROA.3143-44. While this Court has not explicitly held whether a court can draw an adverse inference from a defendant's silence at sentencing, it acknowledged that this adverse inference must affect the sentence to be entitled to relief. *See United States v. Sepulveda*, 64 F.4th 700, 710-12 (5th Cir. 2023).

The lower court failed to acknowledge Ashley's rehabilitation through his nearly five years of incarceration, a highly relevant consideration for more than one § 3553(a) factors. *Pepper v. United States*, 562 U.S. 476, 491, 131 S. Ct. 1229, 1242 (2011). Ashley has maintained a clean disciplinary record, teaches fellow inmates, holds institutional employment, and participates in educational programming. ROA.3186.

### iii.  Clear Error of Judgment

It is clear error of judgment for the district court to focus solely on aggravating sentencing factors without addressing any mitigating factors in its balancing. *United States v. Mathes*, 839 F. App'x 879, 883 (5th Cir. 2021)(citing *Gerezano-Rosales*, 692 F.3d at 401).

The lower court's emphasis on Count 20 establishes clear error in balancing the factors. The court treated Count 20 as proof that Ashley would have inevitably caused another victim's death in a separate life-insurance scheme, had the scheme come to fruition. That conclusion is not a reasonable inference of the record.

Midland National testified that Ashley applied for a policy for Villarreal using a form requesting a blood test, even though premium options existed that did not require one. ROA.2696,2697,2699. On that form, Ashley disclosed Villarreal smoked half a pack of cigarettes daily, had used controlled substances in the past 10 years, and smoked marijuana daily. ROA.2704-06. Midland National testified that the company could deny coverage based solely on these answers, and would not issue a policy without blood results when a test is requested. ROA.2707-08. Midland National declined to cover Villarreal given the results of his labs. ROA.2696. Villarreal's stepdaughter further confirmed he had been suffering from diabetes, heart problems, and high blood pressure for 10 years. ROA.2716-16.

On this record, it is not a reasonable inference that Villarreal would have qualified for a life insurance policy after medical testing – something Ashley as a life insurance agent would be aware of – much less that Ashley's conduct would have resulted in another death. The court's finding improperly revived the same discredited murder narrative through a different doorway. The stark reliance on

hypothetical harm that is uncharged, unproven, speculative, and contradicted by trial testimony is unreasonable.

The resulting sentence bears no relationship to the seriousness of the remaining conduct or to the Guidelines. Such an extreme variance, based on factors wholly disconnected from the surviving convictions, represents a clear error in judgment under § 3553(a). See *Dean v. United States*, 581 U.S. 62, 67 (2017) (§ 3553(a) requires a sentence "sufficient, but not greater than necessary"). No § 3553(a) factor justifies converting a low-level fraud Guidelines range into a de facto life sentence based on vacated or speculative harm.

The reliance of Ashley's lack of remorse, again, punishes Ashley for exercising his right to appeal. Ashley was forced to trial on charges for which he urged from the start, could not be legally sustained. Ashley's right to appeal proved fundamental in his right to due process, given this Court's vacatur of twelve counts. Therefore, weighing his silence at allocution as a factor shows, yet again, another error in balancing the factors.

Ashley's sentence of 60 years functions as a life sentence. *See United States v. Neba*, 901 F.3d 260, 264 (5th Cir. 2018); *United States v. Looney*, 532 F.3d 392, 395 (5th Cir. 2008). Imposing an effective life sentence for the five remaining non-violent financial offenses is grossly disproportionate to the gravity of the conduct

and results in an unjust punishment. See *Neba*, 901 F.3d at 264.

The lower court's impermissible bias in its first sentencing of Ashley further demonstrates clear error of judgment. In addition to its multiple comments about the disingenuousness of Appellant's argument at sentencing (arguments which were ultimately proven correct, and resulted in many vacated counts), the court allowed substantial weight to be given to its personal judgment of Ashley and imposed an excessive sentence that was far greater than necessary, by a magnitude of over 400%. Numerous times throughout the first sentencing, the district court indicated that it was attempting to craft its rulings so that, regardless of the legal merits of various arguments, a specific sentence could be reached:

> And just so you know, even if I'm wrong on these objections, for all the reasons I stated -- those were all grounds -- I would give you the same sentence. So even if you go get me reversed on these objections, I would give you the same sentence I'm giving you today. So whichever way I have to do it to figure it to get there, I would do that because if I can't make it very clear for what you've done in all of this case -- I've said it before, and I'll say it again -- you should never be out in the public ever again.

ROA.3147.

The resulting sentence does just that. The court attempts to justify its unreasonable sentence, given the five remaining counts, through improperly weighing irrelevant factors without consideration for any mitigating factors. Given it clear intentions on the record, a sufficient explanation to justify this severe, above-

Guidelines sentence is missing.

## II.    VINDICTIVENESS

To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort. *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 668 (1978). "for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional." *Id.* Punishment is the inherent purpose of the criminal system, so the presence of a punitive motive does not provide an adequate basis for distinguishing the government's conduct as a justified response to criminal conduct from an unconstitutional response aimed at noncriminal, protected activity. *United States v. Goodwin*, 457 U.S. 368, 369, 102 S. Ct. 2485, 2487 (1982).

Given that motives are complex and difficult to prove, it is necessary to "presume" an improper vindictive motive when a reasonable likelihood of vindictiveness exists. *Id.* Though a mere opportunity for vindictiveness does not unilaterally impose a reasonable likelihood of vindictiveness. When the presumption is not established, an actual objective show of motivation can still establish vindictiveness. *Id.* at 384. An institutional bias exists within the judicial system that discourages the relitigation of resolved issues, a deep-seated bias reflected, at least in some part, in doctrines like *stare decisis*, *res judicata*, law of the case, and double

jeopardy. That same pressure can, even unintentionally, give rise to vindictive prosecutorial or judicial reactions when a defendant exercises the right to seek retrial. *Goodwin*, 457 U.S. at 376-77.

Likewise, it is not that the likelihood of actual retaliatory motivation must exist, but that the likelihood that defendant feared vindictiveness causing deterrence in his right to appeal. *Blackledge v. Perry*, 417 U.S. 21, 28, 94 S. Ct. 2098, 2102 (1974) (citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), overruled on other grounds by *Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989)). However, the due process violation "lay not in the possibility that a defendant might be deterred from the exercise of a legal right . . . but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction." *Goodwin*, at 378 (citing *Blackledge v. Perry*, 417 U.S. 21, 26-27, 94 S. Ct. 2098, 2102 (1974) and *Pearce*, 434 U.S., at 363.

This Court reviews a district court's factual findings concerning prosecutorial vindictiveness for clear error and its legal conclusions de novo. *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008). Ashley properly preserved his presumption of vindictiveness and actual vindictiveness claim, both on his first appeal and at re-sentencing. ROA.632-37,24735.

A prosecutor may not increase the charge or penalty against a defendant solely as a punishment for invoking his right to appeal. *United States v. Dvorin*, 817 F.3d 438, 455-57 (5th Cir. 2016). Vindictiveness can be proven two ways: (1) through objective demonstration that the prosecutor's actions were designed to punish a defendant for asserting a legal right; or (2) through sufficient facts that give rise to a presumption of vindictiveness. *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008).

A presumption of vindictiveness only arises "where there exists a realistic likelihood of vindictiveness." *Id.* (internal quotations omitted). To determine whether the presumption of vindictiveness applies, the court "examine[s] the prosecutor's actions in the context of the entire proceedings," and "[i]f . . . the course of events provides no objective indication that would allay a reasonable apprehension by the defendant that the [additional] charge was vindictive, . . . a presumption of vindictiveness applies." *United States v. Krezdorn,* 718 F.2d 1360, 1365 (5th Cir. 1983). If a presumption exists, then the government must prove by a preponderance of the evidence "that events occurring since the time of the original charge decision altered that initial exercise of the prosecutor's discretion." *Id.*

A presumption does not arise when "any objective event or combination of events in those proceedings [would] indicate to a reasonable minded defendant that

the prosecutor's decision . . . was motivated by some purpose other than a vindictive desire to deter or punish appeals." *United States v. Wells*, 262 F.3d 455, 466-67 (5th Cir. 2001) (internal citation and quotation omitted). When there is no presumption established, the burden remains upon the defendant to prove actual vindictiveness. *Alabama v. Smith*, 490 U.S. 794, 799, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989).

Here, prosecutorial vindictiveness exists by a presumption and by objective evidence. Ashley urges both the presumption of prosecutorial vindictiveness and actual prosecutorial vindictiveness. ROA.24733-738. Ashley's pre-trial motion to dismiss for prosecutorial vindictiveness also urged both methods of vindictiveness. ROA.632-37.

### A. Presumption Exists.

A presumption of prosecutorial vindictiveness exists where a second superseding indictment, on remand, adds additional forfeiture penalties based on the same underlying conduct after the government has agreed to vacate the judgment on appeal after discovering a *Brady* violation. *United States v. Dvorin*, 817 F.3d 438 (5th Cir. 2016). The government argued that its earlier omission of forfeiture was a mistake constituting an objective event sufficient to rebut the presumption. The Fifth Circuit disagreed, finding no objective event to justify the new penalties.[11] *United*

---

[11] "Specifically, the government points to the following evidence: (1) the forfeiture count was

*States v. Dvorin*, 817 F.3d 438, 455-56 (5th Cir. 2016) (citing *United States v. Wells*, 262 F.3d 455, 467 (5th Cir. 2001) (concluding that a defendant's breach of a plea agreement is an objective event that could cause that prosecutor to withdraw leniency and alter the sentencing recommendation previously given); *United States v. Moulder*, 141 F. 3d 568, 572 (5th Cir. 1998) (successful appeal seeking dismissal of the defendant's conviction was an objective event that would motivate the government to reinstate a drug charge that had previously been dismissed pursuant to a plea agreement); *Krezdorn*, 718 F.2d at 1362, 1365 (concluding that the prosecutor's decision to charge conspiracy in a superseding indictment was motivated by the Fifth Circuit's intervening opinion reversing the defendant's convictions on the ground that evidence of 32 forgeries was inadmissible absent a conspiracy charge)). The Court emphasized that the government's agreement to vacate and remand, driven by an acknowledgment that reversal was inevitable, not by leniency toward the defendant, supported the presumption of vindictiveness. Although a new prosecution team filed the superseding indictment, the same U.S.

---

added by a prosecution team that was not involved in the original prosecution and appeal; (2) the prosecution did not seek a new indictment just to add the forfeiture notice, but also clarified the charge and scheme and addressed issues Dvorin raised in a motion to strike surplusage; (3) the new prosecutors added the forfeiture notice because its omission in the prior indictment was an oversight that was contrary to office practice; (4) the government's decision to add the forfeiture notice was based in part on new analysis of Pavillion's records showing the monetary benefit Dvorin received from the check-kiting scheme; (5) the prosecutors sought forfeiture to give them additional tools to make the victim whole; and (6) the government's overall conduct belies the notion that the forfeiture notice was included out of vindictiveness." *Id.* at 455.

Attorney's Office pursued the additional penalties, further reinforcing the inference of institutional bias. *Dvorin*, 817 F.3d at 456.

Considering the full course of the trial prosecutors' actions, a presumption applies here. The government's actions reveal a pattern of vindictive conduct extending from pretrial through resentencing.

### i.    Pretrial

Although Ashley did not raise his pre-trial prosecutorial vindictiveness claim on his prior appeal, given the difficulty in proving vindictiveness pre-trial (*see Goodwin*, 457 U.S. at 370), the prosecutorial vindictiveness before trial merits equal consideration. *See Krezdorn,* 718 F.2d at 1365 (the court "examine[s] the prosecutor's actions in the context of the entire proceedings"). Courts are cautious to adopt a fixed presumption of vindictiveness in the pretrial context, recognizing a prosecutor's assessment of the case often evolves before trial. However, after trial begins, this presumption is stronger considering the government has typically assessed all the evidence and determined the full scope of prosecution. *United States v. Saltzman*, 537 F.3d 353, 360 (5th Cir. 2008) (quoting *Goodwin*, 457 U.S. at 370). An initial indictment does not necessarily define the scope of the government's legitimate prosecutorial interest. Just as a prosecutor can dismiss charges to avoid the time and expense of trial, additional charges can be filed if an initial expectation

of a guilty plea proves unfounded. *Goodwin*, 457 U.S. at 382.

Here, that logic does not excuse the government's conduct. Ashley's initial indictment, filed on November 13, 2020, charged only the Ponzi scheme allegations, Count 1 - 6. ROA.32-48. After appealing his order of detention to the district court, the government filed its First Superseding Indictment on May 12, 2022, adding Counts 14 through 17 which introduced an entirely new life insurance fraud scheme. ROA.94-116. The district court relied heavily on those newly added allegations in its denial of Ashley's detention appeal. ROA.195-204,634-35. Between June 13, 2022, and August 24, 2022, Ashley filed several dispositive pre-trial motions. Shortly after, on September 7, 2022, the government filed, a presumably retaliatory, Third Superseding Indictment, adding two counts that carried a mandatory minimum sentence of life, despites its full knowledge of the underlying facts "for at least eighteen months". ROA.464-89. These new charges appeared retaliatory given their timing and the government's full prior knowledge of the underlying facts. *See* ROA.519-25. In the Eastern District of Texas, indictments are reviewed for appropriateness and consistency by the chief of the respected division. In Ashley's case, the reviewing chief was also on the trial team. ROA.24747-749.

The presumption is established, given the facts pertinent to the superseding indictments had been known to the government for a considerable amount of time,

and it cannot be presumed these inappropriate superseding indictments were the result of mistake or oversight given the indictment review process.

### ii. Post-trial

While the pretrial record supports a presumption of prosecutorial vindictiveness, the most egregious due process violation occurred at resentencing. The government remained unwavering in its pursuit of a life sentence, despite its own concessions, contradictions, and acknowledged overreach.

At Ashley's initial sentencing, the government filed a motion seeking an upward variance or departure and consecutive sentences. ROA.1140-44. By the time of sentencing, however, it reversed course and requested a downward variance. ROA.3138. On remand, the government's conduct again reflected its vindictive intent. The government vigorously prosecuted the case and convinced the jury to return a guilty verdict on all counts and, subsequently, convinced the district court to uphold all counts of convictions through its Rule 29 response, only to concede the majority of its case on appeal. Then, in its motion for an upward variance or departure and consecutive sentences on remand, the government requested Ashley be sentenced to sixty years, despite his Guidelines range being 108 to 135 months and most of his convictions being vacated – relying on the "murder scheme" in its justification. ROA.24726-28. Despite its own actions forcing the case to

resentencing, nevertheless, the government sought to achieve the original sentencing outcome through a combination of upward departures and consecutive sentencing.

The revised Presentence Report also introduced new punitive enhancements that were neither included nor justified in the original PSR, further compounding the appearance of retaliation. Count 20, the life insurance fraud against Villarreal, was not challenged on appeal. However, the new amended PSR calculated, for the first time, the attenuated $400,000 from this count in its loss calculations. ROA.24323. Similarly, it accounted for $20,000 from Seegan/Texas Capital, relating to Count 14 and 19, that was not previously accounted for in the loss calculation. ROA.24323.

The government further showed its intent when it interviewed a victim of "relevant conduct" for the first time on remand, in an effort to support the substantial financial hardship enhancement even though the count relating to the victim that experience financial hardship originally was vacated. ROA.24736. Despite all counts and enhancements relating to Seegan's death being vacated, the government chose, for the first time at resentencing, to have Seegan's nephew provide a victim impact statement focusing on Seegan and his death. ROA.3181-84. The government relied on vacated and acquitted conduct to justify a sixty-year sentence, further demonstrating prosecutorial vindictiveness and disregard for the limits of due process.

Ashley is currently 52 years of age. With no parole in the federal system, imposing a 60-year sentence is a life sentence. *See United States v. Neba*, 901 F.3d 260, 264 (5th Cir. 2018) (A seventy-five-year sentence is equivalent to a life sentence when imposed upon a 54-year-old defendant); *United States v. Looney*, 532 F.3d 392, 395 (5th Cir. 2008) (holding while a 45 year sentence to a defendant in her fifties is a life sentence and could be considered disproportionate; however, it was not cruel and unusual given it was the statutory mandatory minimum set by Congress.). A sixty-year sentence, effectively the same life sentence Ashley was sentenced to initially, is grossly disproportionate to the gravity of the remaining counts of conviction. *Neba*, 901 F.3d 260, 264 (5th Cir. 2018). The government's request for a de facto life sentence on the five remaining counts, essentially the same punishment it sought when Ashley faced seventeen counts and eight enhancements, is telling. That the prosecution now seeks an equivalent term despite its proffer to this Court that it sought to ensure justice was achieved on appeal underscores a vindictive motive and reinforces the appearance of prosecutorial vindictiveness rather than a reasoned assessment of the remaining offenses.

The government's conduct, from indictment to remand, leaves no objective indication that would allay a reasonable defendant's fear of vindictiveness. Rather, Ashley had every reason to fear retaliation, and the record confirms it. For nearly

three years, Ashley warned of this overzealous prosecution. Each time he did, the government raised the stakes, adding counts, enhancements, and theories in direct response. ROA.632–37,24735. Even after trial, it shifted its arguments to preserve failing convictions. ROA.1609-106. On appeal, the appellate division recognized what the trial team refused to admit: the case had been overcharged and overreached. ROA.24747–751. Yet, on remand, the same trial prosecutor sought the same punishment she could no longer lawfully obtain, a de facto life sentence. The appellate concessions can only be surmised as an effort to not get reversed entirely on appeal. While Mr. Visosky and Mr. Day reflected their desire to do the right thing at oral argument, the government's attempt to pursue the benefits of its position while avoiding its consequences on remand negates any attempt at due process. ROA.24759. When the government characterized Ashley's request for a high-end Guidelines sentence as "ridiculous," ROA.3187, it did more than advocate a harsh punishment, it revealed its punitive animus toward a defendant who successfully challenged his convictions. No reasonable minded defendant could find any other purpose for the government's actions on remand, when even "seasoned prosecutors" disagreed with the government's action. ROA.24748. No "objective event" explains or excuses the government's decision to pursue a harsher outcome after conceding its own errors. There were no new facts, no additional evidence, and no intervening

developments, only the government's frustration at being reversed. The government's actions — its shifting theories, eleventh-hour filings, and renewed push for a life-equivalent sentence after conceding its overreach — reflect not prosecutorial discretion, but punishment for daring to challenge it.

### B. Actual Vindictiveness

While the record clearly establishes a presumption of vindictiveness, the record is so blatant that actual vindictiveness is demonstrated too. To prove actual vindictiveness, there must be objective evidence that the government acted solely to punish a defendant for exercising his legal rights, and that the reasons proffered by the government are pretextual. *United States v. Saltzman*, 537 F.3d 353, 360-64 (5th Cir. 2008) (citing *United States v. Dorsey*, 512 F.3d 1321, 1325-26 (11th Cir. Fla. 2008); *United States v. Johnson*, 221 F.3d 83, 94 (2nd Cir. 2000) (A finding of "actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor")).

After the Fifth Circuit vacated twelve counts of conviction, including the count alleging murder carrying two mandatory life sentences, the government nevertheless requested an above Guidelines sentence to reflect the conceded and vacated counts. This alone reveals a retaliatory motive: the government sought to achieve through sentencing what it could no longer sustain through conviction.

The record further reflects that the government proceeded to trial on insufficient counts to secure admission of inflammatory and prejudicial evidence. It later conceded those counts only after successfully leveraging that evidence to obtain the original life sentence, and it now continues to use the same evidence to justify a de facto life sentence.

The government's insistence on portraying Ashley as "disingenuous" for raising legitimate, substantive legal challenges to the enhancement applied at his first sentencing underscores this punitive intent. ROA.3124-28. Such personal and derisive language has no legitimate prosecutorial purpose and instead evidences animus for the defendant's exercise of his legal rights.

Moreover, after trial, the government shifted its theory from trial, in its Rule 29 response, in an effort to salvage the insufficient counts. That change further demonstrates a willingness to manipulate the record to preserve an unsustainable verdict. Even the government's appellate counsel later acknowledged error in the original prosecution, yet the trial team's post-remand filings and arguments unmistakably reject those concessions, signaling internal disagreement and a continuing retaliatory stance.

Viewed collectively, the government's reliance on vacated conduct, its shifting theories, its use of prejudicial evidence it had conceded as insufficient, and

its renewed demand for a life-equivalent sentence despite the dismissal of twelve counts and eight enhancements constitute objective evidence of actual vindictiveness. The prosecution's actions were not the product of reasoned sentencing advocacy, but of hostility toward Ashley for exercising his right to appellate review. Such conduct offends the Due Process Clause and undermines confidence in the fairness of the sentencing process. See *United States v. Saltzman*, 537 F.3d 353, 360–64 (5th Cir. 2008).

## III.  CLERICAL ERROR

The United States Court of Appeals for the Fifth Circuit previously remanded Ashley's case for resentencing after the government conceded various counts and enhancements, among them the enhancements on count 19; 18 U.S.C. §§ 2113 (d) and (e). Although Ashley is only being held responsible for Count 19, 18 U.S.C. § 2113(b), the statutory references to (d) and (e) were overlooked and remained in the PSR and are contained in the judgment. Therefore, Ashley is requesting that the PSR and the Judgment be amended and any reference to (d) and (e) be removed.

## **CONCLUSION**

WHEREFORE PREMISES CONSIDERED, it is respectfully prayed that this Court, upon hearing of this appeal, reverse Ashley's convictions, or in the alternative, remand for re-sentencing.

Respectfully submitted,

/s/James P. Whalen
JAMES P. WHALEN
Texas Bar Card No. 00794837
9300 John Hickman Parkway, Suite 501
Frisco, Texas 75035
Tel: (214) 368-2560

***ATTORNEY FOR APPELLANT***
***Keith Todd Ashley***

# CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that a true and correct copy of this Appellant's Brief was forwarded to the following attorney by electronic means:

Bradley Elliot Visosky                                                          Counsel for Appellee
United States Attorney's Office – Plano                                    (Appellate Court)
101 E. Park Blvd., Suite 500
Plano, Texas 75074

Undersigned counsel hereby certifies that a true and correct copy of this Appellant's Brief was forwarded to Appellant by first class mail to the following address:

Keith Todd Ashley, BOP # 17619-509                                        Appellant
FCI Beaumont Medium
PO Box 26040
Beaumont, Texas 77720

SIGNED this the 31st day of October 2025.

/s/ James P. Whalen
JAMES P. WHALEN

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to 5TH CIR. R. 32.2, undersigned counsel certifies that this brief complies with the type-volume limitations of --------------------Fed. R. App. P. 32--------------------.

1.    This brief complies with Fed. R. App. P. 32(a)(5) and is printed in a proportionally spaced, serif typeface using Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes produced by Microsoft Word software.

2.    Exclusive of the portions exempted by 5TH CIR. R. 32.2, this brief contains 11,187 words printed in a proportionally spaced typeface.

3.    Counsel has provided an electronic PDF version of this brief to the Court.

4.    Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in --------5TH CIR. Fed. R. App. P. 32, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

SIGNED this the 31st day of October.

           /s/ James P. Whalen
           JAMES P. WHALEN
           Texas Bar Card Number 00794837